1

2

3

4                            UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6  GAMIEL C. GRAN and GAIL K. GRAN,    )
                                        )    No. 04-4605-SC
7           Plaintiffs,                 )
                                        )
8      v.                               )    ORDER RE: PARTIES'
                                        )    CROSS-MOTIONS FOR
9  UNITED STATES OF AMERICA,            )    SUMMARY JUDGMENT
                                        )
10          Defendant.                  )
                                        )
11  _____)

12

13  **I.    INTRODUCTION**

14        Plaintiffs Gamiel and Gail Gran ("Plaintiffs") filed suit

15  against Defendant United States of America ("Defendant") following

16  a dispute with the Internal Revenue Service ("IRS") over the

17  validity of a claimed tax refund.  The dispute centers around the

18  applicability of a § 83(b) election under the Internal Revenue

19  Code, 26 U.S.C. § 83.  Section 83 is applicable to taxpayers who

20  receive compensation in the form of property that is subject to a

21  risk of forfeiture, such as restricted stock options.  In the

22  instant suit, Plaintiffs seek to reverse a § 83(b) election made

23  by them in 2000.  Now before the Court is Plaintiffs' Motion for

24  Summary Judgment, which seeks a determination that the election

25  was invalid when made.  Also before the Court is Defendant's

26  Cross-Motion for Summary Judgment, which seeks dismissal of the

27  suit on the ground that Plaintiffs made a valid election under 26

28  U.S.C. § 83.  For the reasons stated herein, the Court DENIES

Plaintiffs' Motion and GRANTS Defendant's Motion, except as to the issue of whether or not a penalty payment is appropriate.

**II.  BACKGROUND**

On February 11, 2000, Gamiel Gran ("Gran") received a grant of 163,755 unvested incentive stock options ("incentive stock options") from Asera Inc. ("Asera") in consideration for employment.  Complaint at 2.  On April 17, 2000, Gran exercised all 163,755 options and made a § 83(b) election with respect to the taxation of the exercise event.  Id.

Also on February 11, 2000, Gran received a grant of 68,750 unvested and non-qualified stock options ("non-qualified stock options") from Asera in consideration for employment.  Id.  On April 17, 2000, Gran exercised all 68,750 options and made a Section 83(b) election with respect to the taxation of the exercise event.  Id.

Plaintiffs filed their Section 83(b) elections on May 1, 2000.  Declaration of Jay R. Weill, Exhibits 2-3.  For both the incentive stock options and the non-qualified stock options, Plaintiffs stated at the time that 163,755 and 68,750 were transferred, respectively, on April 17, 2000.  Id.  Plaintiffs stated that the amount paid for each of the shares, both incentive stock options and non-qualified stock options, was $1.3333 per share, and that the fair market value of each share was $4.00 at the time.  Id.

Initially, Plaintiffs paid the tax due pursuant to their section 83(b) election.  Then, in September 2002, Plaintiffs requested a refund which they received, plus interest, in February

2

**United States District Court**
For the Northern District of California

2003.  Defendant's Motion at 3.  In August 2004, the IRS, having determined that the refund was in error, sent a notice of deficiency to Plaintiffs.  Id.  The notice of deficiency asserted an amount due of $178,896.00, plus $35,779.20 in penalty payments, or a total of $214,675.20.  Id.

Plaintiffs paid $210,525.38 to the IRS in September 2004. Id.  On July 12, 2005, Plaintiffs paid an additional $4,149.82. Plaintiffs' Response at 1.  Plaintiffs have brought suit under 28 U.S.C. § 1346(a)(1), which requires a taxpayer to have fully paid a contested tax liability if a federal district court is to have jurisdiction.  Flora v. United States, 362 U.S. 145, 177 (1960) ("§ 1346(a)(1) ... requires full payment of the assessment before an income tax refund suit can be maintained in Federal District Court.").  The Court finds that the Plaintiffs' two payments for a total of $214,675.20 satisfy the full payment rule; therefore, this Court has jurisdiction over the instant matter.

III.  **LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment in favor of the movant is proper if "there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[T]he movant has the burden of showing that there is no genuine issue of fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Furthermore, "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

3

1    Now before the Court are competing Motions for Summary

2  Judgment.  Under the above standard, with respect to Defendant's

3  Motion, this Court must view the facts in the light most favorable

4  to Plaintiffs, and vice versa.  However, notwithstanding the

5  Court's factual inferences for purposes of the respective Motions,

6  "[i]n any tax-refund case, the [IRS'] deficiency determination is

7  presumptively correct and the taxpayer has the burden of proving

8  that such deficiency is erroneous."  <u>Niles v. United States</u>, 710

9  F.2d 1391, 1393 (9th Cir. 1983).  Therefore, the burden is on

10 Plaintiffs to show that the IRS' deficiency determination is

11 somehow incorrect.

12 **IV.  <u>DISCUSSION</u>**

13     26 U.S.C. § 83 governs the tax implications for employees who

14 receive compensation in the form of restricted stock plans.  The

15 general rule, pursuant to § 83(a), is that a recipient of

16 nonqualified[1] stock options must include in gross income the

17 difference between the fair market value of the stock and the

18 amount paid for the stock in the taxable year in which the stock

19 becomes alienable or is no longer subject to a substantial risk

20 of forfeiture.  26 U.S.C. § 83(a).  The difference is taxed as

21 ordinary income.  However, § 83(b) provides an exception to the

22 general rule.  Under a § 83(b) election, the employee may include

23 in his or her gross income the difference between the fair market

24 value of the stock and the amount paid for it in the year that

25 the options are granted.  <u>Id.</u> at § 83(b).  This can be

26 ───────────────────

27     [1] Qualified stock options, which are not of concern in this
   matter, are covered by 26 U.S.C. § 422.

28                                    4

advantageous for the taxpayer since the taxable amount is usually smaller than the amount as calculated under § 83(a); only when the stock is sold, potentially years later, is appreciation taxable, and it is then at probably lower capital gains rates. However, if a taxpayer makes a § 83(b) election, the election is irrevocable unless the IRS agrees otherwise.  Id. at § 83(b)(2).

In the instant matter, Plaintiffs made a section 83(b) election on May 1, 2000.[2]  Having reviewed the papers submitted by the parties, the Court finds that the election was valid and therefore, irrevocable.  Plaintiffs have put forth a variety of reasons alleging that the election was invalid.  As described below, the Court finds that none of these reasons have merit.

First, Plaintiffs assert that "when unvested stock options are exercised, the income realization event occurs at the time of vesting, not at the time of exercise."  Plaintiffs' Motion at 10. Therefore, Plaintiffs assert that the May 1, 2000 election was invalid since a portion of the shares did not vest until 2001. See, e.g., Declaration of Jay R. Weill at Exhibit 8.  This is simply a misreading of the law.  Section 83(b) applies precisely to situations where vesting has not yet occurred.  Welsh v. United States, 2 Cl. Ct. 417, 418 (Cl. Ct. 1983) ("Under section 83(b), one who receives property which is not substantially vested is allowed 30 days from the date of its transfer to him nevertheless to elect to recognize income in the year of receipt

---

[2] The election covered both the incentive stock options and the non-qualified stock options.  Since there is no need to distinguish between the two for purposes of this Order, the Court will refer to them without distinction.

United States District Court
For the Northern District of California

of the property, rather than the year in which the property becomes substantially vested."). Therefore, the Court holds that the fact that Plaintiffs' options had not substantially vested at the time of the § 83(b) election is immaterial.

Second, Plaintiffs assert that their § 83(b) election was invalid because there was no "transfer" of property as required by the statute. Plaintiffs' Motion at 10-16. Plaintiffs state, "At the time of exercise, the unvested shares were subject to the claims of the creditors of the corporation; therefore, a transfer within the meaning provided in Treas. Reg. § 1.83-3(a) had not occurred which would make Plaintiff eligible to make an 83(b) election." Id. Plaintiffs assert that the property was never transferred to them because Asera had a "Repurchase Option" for any unvested shares. Id. at 11; Declaration of Gamiel Gran Exhibit D at 5. However, the existence of a repurchase option does not foreclose a § 83(b) election. On the contrary, a repurchase option raises a "substantial risk of forfeiture" and § 83(b) applies precisely when there is such a risk of forfeiture. Alves v. Comm'r, 734 F.2d 478, 481 (9th Cir. 1984) ("Section 83 [requires] the taxpayer either to elect to include the 'excess' of the fair market value over the purchase price in the year the stock was transferred, or to be taxed upon the full amount of appreciation when the risk of forfeiture was removed."). As the Alves court noted, "By it's terms, the statute applies when property is ... subject to a substantial risk of forfeiture." Id. The statute explicitly assumes that a § 83(b) election may result in forfeiture. 26 U.S.C. § 83(b)

**United States District Court**
For the Northern District of California

("...if such property is subsequently forfeited..."). Therefore, the Court finds that the fact that Asera maintained a repurchase option in Plaintiffs' share options does not necessarily mean that there was no transfer of property as required for a valid § 83(b) election.

Rather, a repurchase option only affects the validity of a § 83(b) election if the option never lapses. 26 U.S.C. § 83(b)(1)(A). The repurchase option at issue here lapsed upon the full vesting of the shares.[3] Declaration of Gamiel Gran Exhibit D at 5. Therefore, the Court finds that it does not affect the validity of the election.

Plaintiffs assert that the Doctrine of Constructive Receipt, which states that "a taxpayer recognizes income when the taxpayer has an unqualified, vested right to receive immediate payment," Martin v. Comm'r, 96 T.C. 814, 823 (T.C. 1991), dictates that there was no transfer of property to Plaintiffs that would trigger § 83. Plaintiffs' Motion at 12. While it is true that Plaintiffs did not have an unqualified, vested right to the property at issue here, to apply the Doctrine of Constructive Receipt would be a misapplication of the law. The fundamental

---

[3] Plaintiffs appear to misunderstand the issue of whether a restriction on the stock is a lapse or non-lapse restriction. For example, Plaintiffs assert that Treas. Reg. § 1.83-9(a)(7) Example 3, in which there is no transfer of stock within the meaning of § 83, is analogous to the facts at hand. However, that example is clearly one of a non-lapse restriction. At issue here is a lapse restriction. Plaintiffs have spent a great deal of time and space arguing that Asera's right to repurchase the unvested options upon Mr. Gran's termination somehow invalidates the § 83(b) election. See, e.g., Plaintiff's Reply at 2-5. Again, the Court emphasizes that it finds that a repurchase option that lapses upon vesting of shares is a lapse restriction, which is immaterial to the statute.

**United States District Court**
For the Northern District of California

basis of a § 83(b) election is that the property has not yet vested in the taxpayer. <u>Welsh</u>, 2 Cl. Ct. at 418. For Plaintiffs to take the Doctrine of Constructive Receipt out of context and attempt to use it to twist the application of § 83(b) is a frivolous argument. Therefore, for all of the immediately above reasons, the Court holds that there was a valid transfer of property from Asera to Plaintiffs.

Third, Plaintiffs allege, "An I.R.C. § 83(b) election is invalid with respect to the exercise of incentive stock options if not made unequivocally as an 'AMT I.R.C. § 83(b) election.'" Plaintiffs' Motion at 16. Therefore, Plaintiffs assert, their election was null and void. <u>Id.</u> at 18. Plaintiffs provide no case law to support their proposition.[4] Rather, the Court finds Plaintiffs' election statement to be a model of what is required under IRS regulations. For example, Plaintiffs' Declaration is a series of seven statements numbered 1 through 7. Declaration of Jay R. Weill, Exhibit 2. Under Treas. Reg. § 1.83-2(e), there are seven requirements for the content of a § 83(b) election, numbered 1 through 7. Having examined Plaintiffs' statement of election, the Court finds that there is a one-to-one match between what the regulations require and what Plaintiffs provided in their election statement. Therefore, Plaintiffs have

_____

[4] Plaintiffs do point to some out-of-circuit cases holding that a "taxpayer's election to waive the carryback period under Code Section 172(b)(3)(C) must be unequivocal and unambiguous to be effective." <u>Miller v. Comm'r</u>, 99 F.3d 1042, 1044 (11th Cir. 1996) (internal citations and quotations omitted). However, the Court fails to see a connection between a § 172(b)(3)(C) election and the § 83(b) election at issue here.

**United States District Court**
For the Northern District of California

1    unambiguously fulfilled the criteria of the regulations.

2         Fourth, Plaintiffs assert that they "should be granted

3    consent to revoke [the] election under I.R.C. § 83(b) because the

4    election was predicated on a mistake of fact."  Plaintiffs'

5    Motion at 18.  Plaintiffs' explanation of this mistake of fact is

6    as follows:

7              Plaintiff was operating under the 'mistakes of fact'
             (1) that the right to repurchase the shares at cost
8            was assignably to the [sic] any party, including
             creditors of Asera, and (2) that Asera that [sic]
9            could only repurchase the shares if Gran terminated
             the employment services.  In reality, the shares
10           could be repurchased at cost if Asera terminated the
             employment agreement, Asera could for any reason
11           terminate the employment agreement, and Asera would
             had [sic] a fiduciary duty to its shareholders to
12           repurchase the shares at cost if it did terminate
             Grans' [sic] employment if the repurchase was in the
13           shareholders [sic] best interest.  If Plaintiff had
             known of these facts, he would not have made the
14           83(b) election at the time of the exercise of the
             unvested shares.  He would have waited until the
15           share [sic] had vested.

16   Plaintiffs' Motion at 18-19 (internal citations omitted).  These

17   facts, which Plaintiff Gamiel Gran alleges he was unaware of,

18   were plainly written in the Stock Option Exercise and Repurchase

19   Agreement ("Agreement").  For example, with respect to the issue

20   of Asera's right to repurchase the unvested shares at cost, the

21   Agreement  stated, "The Company ... shall have the option to

22   repurchase Purchaser's Unvested Shares ... if Purchaser is

23   Terminated (as defined in the Plan) for any reason, or no

24   reason."  Declaration of Gamiel Gran, Exhibit D at 5.  This

25   sentence appeared under a section titled in underlined bold

26   letters, "Company's Repurchase Option for Unvested Shares."  Id.

27   Then, in the same section of the Agreement, but under a

28                                    9

subsection with the underlined title, "Calculation of Repurchase Price," the Agreement stated, "The Company or its assignee(s) shall have the option to repurchase from Purchaser ... the Purchaser's Unvested Shares at the Purchaser's original Price Per Share." Id. at 9.  On page 12 of the Agreement appears Mr. Gran's signature.  Under California contract law, "a unilateral mistake not encouraged or fostered by the other party is not reasonable when plaintiff could have ascertained the truth through the exercise of reasonable diligence." Brookwood v. Bank of America, 53 Cal. Rptr. 2d 515, 520 (Cal. Ct. App. 1996) (internal citations and quotations omitted).  Furthermore, "[r]easonable diligence requires the reading of a contract before signing it." Id.  (internal citations and quotations omitted). Plaintiffs have not alleged any facts to suggest that Asera encouraged or fostered the alleged mistake.  The Court therefore holds that given the plain language of the Agreement as stated above, Plaintiffs did not make a mistake of fact which would void their § 83(b) election.  As Defendant notes, the opposite conclusion would be absurd.  "If the plaintiffs have their way, taxpayers could sign documents without reading them, and then revoke their elections if subsequent events are unfavorable, claiming that they were under mistakes of fact as to the contents of the agreement." Defendant's Opposition at 11.  The Court declines Plaintiffs' invitation to reach such a conclusion.

Fifth, Plaintiffs request that even if this Court holds that the § 83(b) election was valid, as this Court does hold, that they be allowed to adjust the declared value of the shares on

10

their election statement by reapportioning the value between vested and unvested shares. Plaintiffs' Motion at 22-24. However, the statute unambiguously states that the fair market value of the property at time of transfer is to be "determined without regard to any restriction other than a restriction which by its terms will never lapse." 26 U.S.C. § 83(b)(1)(A). Since the vesting conditions were conditions which would lapse, the Court finds that they are immaterial to the fair market value of the share options at the time of Mr. Gran's election. Therefore, the Court declines to allow Plaintiffs to reapportion the value of the vested and unvested shares.

Finally, Plaintiffs assert that they should not be subject to penalty for underpayment because they submitted a Form 8275 attached to their Form 1040X for the 2000 tax year. Plaintiffs' Motion at 24. Plaintiffs state that the Form 8275 is included in the exhibits attached to the Declaration of Gamiel Gran. The Court has reviewed the exhibits and the Form does not appear to be attached. Therefore, at this time, the Court finds that the penalty imposed under 26 U.S.C. § 6662 was not in error. However, if Plaintiffs can show the existence of a Form 8275 that was filed with their previously filed Form 1040X for the 2000 tax year, the Court grants Plaintiffs 30 days from the date of this Order to file a renewed motion with respect to this issue.

In sum, the Court emphasizes that § 83 "is a comprehensive and complex arrangement of the rights, responsibilities and risks of transferees, as well as transferors, of property in connection with the performance of services." Welsh, 2 Cl. Ct. at 418. It

11

applies to unvested stock options used to compensate employees, such as the options at issue.  See, e.g., Robinson v. United States, 335 F.3d 1365 (Fed. Cir. 2003).  An employee recipient of stock options may choose to pay tax on the difference between cost and fair market value in the year of the option grant or in the year of vesting.  26 U.S.C. § 83.  The former is governed by § 83(b), the latter by § 83(a).  If a § 83(b) election is made, "subsection (a) shall not apply with respect to the transfer of such property."  Id. at § 83(b)(1); Cramer, 64 F.3d at 1411.  In other words, it is an either/or choice.  Furthermore, when there is a substantial risk of forfeiture, such as a repurchase option held by the transferor or its creditors, while § 83(a) cannot apply until the risk of forfeiture is removed, there is no such requirement mentioned in § 83(b).  "[W]hen Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded."  Cramer, 64 F.3d at 1412 (internal citations and quotations omitted).  Therefore, the fact that there was a repurchase option, which lapsed upon vesting as described above, is of no consequence here.  See, e.g., Alves, 734 F.2d at 480.

Based on this case law, Plaintiffs made a valid § 83(b) election.  The statute was written precisely to cover the sorts of transactions as the one at issue here.  Section 83 provides taxpayers with flexibility in deciding when they pay tax on unvested property that may appreciate significantly in value-- electing § 83(b) "enables the employee to treat as a capital gain any appreciation in the value of the property between the time of

12

United States District Court

For the Northern District of California

1   the transfer and the time the restrictions lapse." <u>Robinson</u>, 335

2   F.3d at 1367.  The flip side is that should the property fail to

3   appreciate, become worthless as here, or be forfeited, the

4   election cannot be undone--"an election under § 83(b) is not

5   cost-free: if a taxpayer elects to include property as gross

6   income, even though the property is forfeitable and is

7   subsequently forfeited, the taxpayer may not claim a deduction

8   for the loss."[5]  <u>Theophilos v. Comm'r</u>, 85 F.3d 440, 449 (9th Cir.

9   1996).  Therefore, while the Court sympathizes with Plaintiffs,

10  who gambled that their Asera options would result in significant

11  capital gain when it in fact did not, their § 83(b) election is

12  valid and irrevocable.

13  **V.   <u>CONCLUSION</u>**

14      For the reasons stated above, the Court holds that Plaintiffs

15  have not carried the burden of showing the IRS' deficiency

16  determination was in error.  Rather, the Court holds that

17  Plaintiffs made a valid 26 U.S.C. § 83 election.  The Court also

18  holds that Plaintiffs did not make a mistake of fact or law which

19  would allow rescission.  Furthermore, the Court declines to allow

20  Plaintiffs to reapportion the previously stated value of the

21  vested and unvested shares.  Therefore, the Court hereby DENIES

22  Plaintiffs' Motion for Summary Judgment, except as to the issue of

23  the penalty payment, as hereinafter set forth.  With respect to

24  Defendant's Motion for Summary Judgment, the Court hereby GRANTS

25

26      [5] This inability to deduct a loss for taxes paid is distinct
    from the deduction suggested by Defendant, which would be a
27  deduction for the basis loss.

28
                                13

the Motion but stays issuance of a judgment dismissing the case pending resolution of the issue of whether or not a penalty payment is appropriate.  Solely with respect to that issue and the disputed Form 8275, the Court GRANTS Plaintiffs 30 days from the date of this Order to renew their Motion.  Should Plaintiffs choose not to file anything within 30 days, then the Court will grant Defendant's Motion in its entirety and dismiss the action with prejudice.

IT IS SO ORDERED.

Dated: August  26 , 2005



UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

14